IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

THOMAS JOHNSON and
BETTY JOHNSON,

                Plaintiffs,

v.                                            CIVIL ACTION NO. 3:04-1240

UNITES STATES OF AMERICA,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Currently pending before the Court is Defendant United States of America's motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In their motion, Defendant argues that Plaintiffs Thomas and Betty Johnson failed to comply with West Virginia's Medical Professional Liability Act (MPLA), W. Va. Code § 55-7B-1 *et seq.*,[1] and, therefore, this action must be dismissed. For the following reasons, the Court disagrees.

In November of 2002, Plaintiff Thomas Johnson filed a Standard Form 95 (SF-95) administrative claim alleging that Omar ElBash, M.D. and other agents and employees of the Huntington Veterans Administration Medical Center failed to properly perform an operation involving the implantation of a penile prosthesis. On February 27, 2003, Plaintiff Betty Johnson completed an SF-95 administrative form claiming a loss of consortium and alienation of affection

---

[1] Plaintiffs filed this action on November 19, 2004, and, therefore, the 2003 version of the MPLA applies to this case. *See* W. Va. Code § 55-7B-10(b) (stating the amendments to the MPLA apply to all actions filed on or after July 1, 2003).

as a result of the medical negligence committed on her husband. By letter dated June 2, 2004, Mr. Johnson's claim was administratively denied by the Department of Veterans Affairs. To date, the Department of Veterans Affairs has not ruled on Mrs. Johnson's claim. On November 19, 2004, Mr. and Mrs. Johnson filed the current action against the United States.

In its motion to dismiss, the United States argues that Plaintiffs' action must be dismissed because they failed to comply with the pre-filing requirements contained in West Virginia's MPLA. Plaintiffs disagree on two grounds. First, they argue that the MPLA does not apply to this case because the statute only applies to "health care providers" and the United States does not meet the statutory definition of either a "health care provider" or a "health care facility." Next, Plaintiffs argue that, if the Court finds the MPLA does apply to this case, they have complied with the statutory requirements. The Court will address these issues in turn.

Pursuant to West Virginia Code § 55-7B-6(a), a medical professional liability action may not be filed against any "health care provider" without complying with the pre-filing requirements contained in the rest of the code section.[2] The terms "health care provider" or a "health care facility" are defined in West Virginia Code § 55-7B-2(f) & (g), which provides:

> (f) "Health care facility" means any clinic, hospital, nursing home, or assisted living facility, including personal care home, residential care community and residential board and care home, or

---

[2] West Virginia Code § 55-7B-6(a) provides: "Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section." W. Va. Code § 55-7B-6(a).

> behavioral health care facility or comprehensive community mental health/mental retardation center, in and licensed by the state of West Virginia and any state operated institution or clinic providing health care.
>
> (g) "Health care provider" means a person, partnership, corporation, professional limited liability company, health care facility or institution licensed by, or certified in, this state or another state, to provide health care or professional health care services, including, but not limited to, a physician, osteopathic physician, hospital, dentist, registered or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist, psychologist, emergency medical services authority or agency, or an officer, employee or agent thereof acting in the course and scope of such officer's, employee's or agent's employment.

W. Va. Code § 55-7B-2(f) & (g). Plaintiffs insist that because the United States does not fit within either of these definitions, the MPLA does not apply to this case. Although there is no Fourth Circuit case deciding whether the United States is subject to West Virginia's MPLA, the Fourth Circuit held in *Starns v. United States*, 923 F.2d 34 (4th Cir. 1991), that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA.

As here, Virginia law requires a "health care provider" to be licensed by the State.[3] 923 F.2d at 37. Although the United States was not licensed to provide health care in Virginia, the Fourth Circuit said "Virginia law informs us on how a private party would be treated, it is incapable of telling us to what extent the federal government has waived its sovereign immunity." *Id*. (citations

---

[3]Virginia's Medical Malpractice Act of 1976 defined a "'health care provider' as 'a person, corporation, facility or institution licensed by this Commonwealth to provide health care or professional services.'" 923 F.2d 34 (quoting Va. Code Ann. § 8.01-581.1(1) (1984)).

-3-

omitted). It is the FTCA which governs how the United States will be treated, and it provides that the United States "'shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances.'" *Id*. (quoting 28 U.S.C. § 2674 (1988)). Thus, the Court concluded that "[s]ince private health care providers in Virginia would in 'like circumstances' be entitled to the benefit of [the liability cap] . . ., so too, is a federally operated hospital in that state." *Id*.[4] This Court finds that the same analysis applies here. That the Veterans Administration Medical Center is not licensed by West Virginia does not answer the question as to whether West Virginia law applies to it by virtue of the FTCA. Clearly, under the analysis in *Starns*, it does. Therefore, the Court finds the MPLA applies to this case. *See also Bellomy v. United States*, 888 F. Supp. 760 (S.D. W. Va. 1995) (applying West Virginia's MPLA to claim brought under FTCA).

Next, the Court must decide whether Plaintiffs' claims should be dismissed because they failed to file a screening certificate of merit as required under § 55-7B-6(b). Plaintiffs concede that they did not file a screening certificate of merit and that they are generally required under § 55-7B-6(b), which provides:

---

[4]Other jurisdictions have reached the same conclusion even when the United States does not meet those States' definitions of "health care facility" and "health care provider." *See Taylor v. United States*, 821 F.2d 1428, 1431-32 (9th Cir. 1987) (finding that California's cap on damages for professional negligence applied to a case filed against the United States for medical malpractice committed on an Army hospital in California despite the fact the hospital was not "licensed" by the State); *see also Haceesa v. United States*, 309 F.3d 722, 725 (10th Cir. 2002) (finding that New Mexico's statutory cap on medical malpractice recoveries applied to the United States despite the fact the United States did not meet the statutory requirements of filing proof of insurance and paying the Patient's Compensation Fund surcharge); *Kennedy v. United States*, 750 F. Supp. 206, 212 (W.D. La. 1990) (holding Louisiana's medical malpractice liability cap applied to the United States even though the United States is not a "qualified health care provider" under Louisiana law because such law "cannot control the scope of the federal government's waiver of sovereign immunity").

> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. . . .

W. Va. Code § 55-7B-6(b). However, Plaintiffs argue that this case falls within the exception contained in § 55-7B-6 (c), which states:

> (c) Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

W. Va. Code § 55-7B-6(c). Plaintiffs argue that this section applies because their "action is based upon a well-established legal theory of liability" and that an expert is not required to show a breach

-5-

of the standard of care. *Id*. Thus, Plaintiffs assert that the only requirement is that they filed "a statement specifically setting forth the basis of the alleged liability . . . in lieu of a screening certificate of merit." *Id*. Plaintiffs further argue that they met this requirement when they completed their SF-95 administrative claim forms. On his form, Mr. Johnson wrote, in part, that "Dr. ElBash implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." On her form, Mrs. Johnson wrote that her claim for loss of consortium, alienation, and affection is the direct and proximate result of negligence in operating and treating her husband. Although the United States argues that Mr. Johnson's statement on his SF-95 administrative claim form is insufficient to meet the requirements of paragraph (c), the Court disagrees.

As acknowledged by the United States, one purpose of paragraph (c) is to place potential defendants on notice of the precise claims being brought against them to allow them to take advantage of pre-litigation mediation. In reviewing Mr. Johnson's statement, it provides that he has suffered damages because a too large Prosthesis was placed in backward. The Court finds this statement on the SF-95 form meets the goal of alerting the United States of the precise nature of his claim. In addition, when the Court considers this claim in the light most favorable to Plaintiffs, the Court finds it is one which may not require expert testimony in order to prove liability under paragraph (c). Moreover, the mere fact the statement is not labeled as being in lieu of a screening certificate of merit does not make it insufficient.

In its Reply, the United States argues that pursuant to *Stanley v. United States*, 321 F. Supp.2d 805 (N.D. W. Va. 2004), an SF-95 form cannot be a substitute for the requirements set

forth in § 55-7B-6. However, the issue before the court in *Stanley* was whether the pre-filing requirements applied in federal court. In finding that they do, the court stated that filing an SF-95 form under the FTCA does not displace the pre-filing requirements under § 55-7B-6 and that there is nothing to prevent a plaintiff from complying with both federal and state law. *Id*. at 808-09. The court then found the plaintiff did not comply with § 55-7B-6(b) because he did not file a certificate of merit. *Id*. However, there was no discussion in *Stanley* of whether a statement on an SF-95 form asserting liability "based upon a well-established legal theory" also could serve as notice of a claim under § 55-7B-6(c). Upon consideration of this issue, this Court finds that it can.

Accordingly, the Court finds that Plaintiffs' action is governed by West Virginia's MPLA and that the statements on their SF-95 forms are sufficient to meet the requirements of §55-7B-6(c).[5] Therefore, the Court finds Plaintiffs may proceed with this action under that section, and the Court **DENIES** the United States' motion to dismiss. Having determined this case may proceed, the Court also **DENIES** the United States' motion to stay the proceedings pending resolution of this matter.

---

[5]Mrs. Johnson's loss of consortium claim is derivative of Mr. Johnson's claim and, therefore, the MPLA applies to it as well. *See Robinson v. Charleston Area Medical Center, Inc.*, 414 S.E.2d 877, 889 n.11 (W. Va. 1991) (holding statutory cap in MPLA applies to loss of consortium claim).

The Court **DIRECTS** the Clerk to send a copy of this Order written Opinion and Order to counsel of record and any unrepresented parties.

    ENTER:    May 4, 2005

    _____
    ROBERT C. CHAMBERS
    UNITED STATES DISTRICT JUDGE